UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                  Case No. 12-11502-WRS
                                                                       Chapter 13
MARION PARKER,

     Debtor

MARION PARKER,

     Plaintiff                                  Adv. Pro. No. 12-1066-WRS

 v.

CREDIT CENTRAL SOUTH INC.,

     Defendant

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on December 18, 2013. Plaintiff Marion Parker was in court in person and by counsel Nicholas H. Wooten and Defendant Credit Central South, Inc., was present by counsel Roy C. Dumas. Evidence was heard and the Court took the matter under advisement.

## I. FACTS

On August 23, 2012, Parker filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. (Case No. 12-11502, Doc. 1). At that time he owed Credit Central $1,200.00 on a promissory note. (Plaintiff's Exhibit G). Credit Central's promissory note is remarkable in that the interest rate is an eye-popping 62%. Parker properly listed Credit Central as a creditor

and scheduled its debt. The Court's records show that Notice of Commencement of Parker's Chapter 13 bankruptcy case was mailed to Credit Central on August 26, 2012. (Case No. 12-11502, Doc. 12). At trial, Credit Central did not dispute that it received that notice.

On August 14, 2012, nine days prior to Parker's bankruptcy filing, Credit Central filed suit against Parker, in the District Court of Dale County, Alabama, seeking to collect its debt.[1] The complaint filed by Credit Central in Dale County was prepared and filed by Stormy Myers, a clerical employee of Credit Central, at the direction of Kimi Speaks who was the Branch Manager of Credit Central's Ozark, Alabama office. Ms. Speaks filed suit on her own initiative, without the assistance of counsel either locally or in Credit Central's main office. The complaint was made on a form prescribed by the Alabama Judicial System, which contains the warning: "once a judgment has been entered against you, your paycheck can be garnished and/or your home or property sold to satisfy that judgment." (Pl. Ex. D).

On August 23, 2012, the day Parker filed bankruptcy, he spoke with Ms. Speaks and told her that he had filed bankruptcy. Ms. Speaks testified that she telephoned the Dale County District Court and orally advised them of Parker's bankruptcy filing, apparently thinking that this was sufficient to stay proceedings. She did not, at that time, file a written motion to dismiss with the Dale County District Court or take any other action to cause the dismissal of the Dale County civil action or recall service of process, which had been requested but not yet made. On August 28, 2012, Ms. Speaks filed a Proof of Claim with the Bankruptcy Court on behalf of Credit Central with the Court. (Case No. 12-11592, Claim No. 1).

---

[1] The suit was styled Credit Central, Inc., v. Marion Parker, Case No. 12-393.

On September 29, 2012, a Deputy Sheriff served Parker with process in the Dale County suit at his place of employment–more than one month after the bankruptcy filing. On October 25, 2012–more than two months after the bankruptcy filing–default judgement was entered by the Dale County Court, against Parker. On October 26, 2012, Parker filed a complaint initiating this Adversary Proceeding seeking damages for Credit Central's violation of the automatic stay. On November 2, 2012, Credit Central filed a written motion to dismiss with the Dale County District Court, which was granted. Thus, Credit Central was given notice of Parker's bankruptcy filing in two ways. First, he telephoned them and told them. Second, Credit Central received written Notice of Commencement from this Court. Either notice alone should have been sufficient, but the civil suit was not dismissed until after Parker brought suit. The Court finds that Credit Central had actual knowledge of Parker's bankruptcy filing yet proceeded with service of process and the taking of a default judgment in violation of the automatic stay. Ms. Speaks did not file a written motion to dismiss the civil action until some time after Credit Central received service of Parker's complaint initiating this Adversary Proceeding.

Parker testified at trial that he was embarrassed to have been served with process at his place of employment and that he was disturbed that the suit was not promptly dismissed. He admitted that he did not suffer any psychological harm and he did not seek treatment. At trial, counsel for Credit Central noted that Parker had filed suit against other creditors, both in the context of his current bankruptcy filing and in a prior bankruptcy filing in 2003. The Court heard Parker's testimony and observed his demeanor. The Court finds that Parker was forthright and credible and that his testimony was sincere. Moreover, he testified that his wife had been ill and that he was concerned about her well being.

3

## II. LAW

This Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). This is a final order.

Upon the filing of a petition in bankruptcy, an automatic stay arises. 11 U.S.C. § 362(a).

> a petition filed under section 301 . . . operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Id.

\* \* \*

> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k).

The automatic stay prohibits the "maintenance" of a civil action. Therefore, Credit Central was under a duty take affirmative action to prevent the suit from going forward. Roche

4

v. Pep Boys, Inc., (In re Roche), 361 B.R. 615 (Bankr. N.D. Ga. 2005) (stating that a creditor may not sit on its hands and permit a stay violation to occur). The responsibility to act is on the creditor. Id., at 621. Credit Central's maintenance of its civil action against Parker, after it was aware of Parker's bankruptcy filing, was a violation of the automatic stay. That is, Credit Central permitted its civil action to go forward, serving process on Parker at his place of employment and later taking default judgment. This is both the continuation and employment of process, both of which violate the automatic stay. See, Alley Cassetty Companies, Inc., v. Wren, 502 B.R.609, 613,(N.D. Ga.); Roche, 361 B.R. at 622 (finding an affirmative duty on creditor to release garnishment once it learns of a bankruptcy filing); In re Taylor, 190 B.R. 459 (Bankr. S.D. Fla. 1995) (failure to take affirmative action to dismiss suit was a violation of the automatic stay). Credit Central was under an affirmative duty to stop, or stay its civil action. It did not and for that reason, it violated the automatic stay. Caffey v. Russell (In re Caffey), 384 B.R. 297, 307 (Bankr. S.D. Ala. 2008) ("The creditor should not be allowed to then sit back and 'choose to do nothing and pass the buck to the debtor' to stop the process.") (citations omitted). "Creditors have a duty to establish procedures to avoid violating the bankruptcy laws." Govero v. Axelrod (In re Govero), 439 B.R. 917, 922 (Bankr. S.D. Fla. 2010); see also In re Briskey, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001) (holding that creditor had an affirmative duty to recall garnishment order which was lawful when entered but violated automatic stay after petition in bankruptcy was filed); In re Patti, 2001 WL 1188218 (Bankr. E.D. Pa. Sept. 14, 2001) (finding that creditor has an affirmative duty to notify state court of bankruptcy filing and vacate judgments entered in violation of co-debtor stay).

Having found a violation of the automatic stay, the Court must next consider an appropriate award of damages. Credit Central here argues that no damages should be awarded because Parker did not suffer any harm. The Court rejects Credit Central's "no blood no foul" argument. One who files bankruptcy is seeking peace from the incessant demands of his creditors for payment. When a creditor continues its collection efforts, it destroys that peace defeating one of the purposes for filing bankruptcy. Moreover, when a creditor violates the automatic stay, it gains a competitive advantage over those creditors who comply. Instead of one voice among many demanding payment, it stands alone. Creditors have an incentive to violate the automatic stay as some debtors no doubt pay. Where the cost of defending suits such as this is outweighed by the benefits to the creditors in increased collections, the decision to violate the automatic stay may well be a rational one. It is then incumbent on the courts to fashion damage awards which are sufficient change the calculus. That is, if the cost of defending suits such as this are sufficiently high, creditors will decide the comply with the automatic stay.

The actions of Credit Central here are admittedly less egregious than some that the Court has observed. The Court heard the testimony of Credit Central's former manager, Kimi Speaks who testified that it was her decision to bring suit. Her failure to promptly and properly stay proceedings in the Dale County District Court was not bourne out of malice or spite, but rather ignorance of legal procedures. As Ms. Speaks has no legal training and that she was not acting under supervision, errors such as this are inevitable. Counsel for Credit Central were straightforward in admitting that it would not be cost effective hire lawyers to bring suits such as the one it brought against Parker. It stands to reason that Credit Central should bear the costs that its actions brought about.

Case 12-01066    Doc 28    Filed 02/11/14    Entered 02/11/14 15:53:20    Desc Main
Document      Page 6 of 10

In a case recently decided in the Northern District of Alabama, the monetary claim of a creditor who repossessed an automobile in violation of the automatic stay was discharged. Credit Nation Lending Services, LLC, v. Nettles, 489 B.R. 239 (N.D. Ala. 2013). "When a creditor knowingly and intentionally violates an automatic stay and the debtor's fundamental rights thereunder and refuses to mitigate the effects of its unlawful conduct, appropriate circumstances exist for the imposition of punitive damages." Id. at 251 (citing In re Gholston, 2012 WL 639288 (Bankr. M.D. Fla. Feb. 27, 2012); see also, In re Hildreth, 357 B.R. 650 (Bankr. M.D. Ala. 2006) (awarding damages and punitive damages for repeated violations of the automatic stay consisting of collection letters improperly imposing fees for nonexistent defaults in the debtor's mortgage).

A case handed down by a Bankruptcy Judge in the Southern District of Florida involved a civil suit which was properly filed prior to the time the debtor filed a petition in bankruptcy. In re Taylor, 190 B.R. 459 (Bankr. S.D. Fla. 1995). When creditor's counsel was advised of the bankruptcy filing, he refused to vacate a default judgment which was entered after bankruptcy filing and therefore in violation of the automatic stay. The position of creditor's counsel in Taylor was that he was not required to vacate the judgment as the debt would discharge and no harm would come to the debtor. Id. The Court in Taylor rejected that argument finding that an inadvertent violation of the automatic stay became willful when counsel, upon learning of the bankruptcy filing, had an affirmative duty to restore the status quo, in that case vacate the default judgment entered in violation of the automatic stay. Counsel for the Defendant in the case at bar argued that no damage was done to the Debtor because its judgment was void. That argument is rejected for the same reason that the argument was rejected in the Southern District of Florida.

7

Upon learning of a debtor's bankruptcy filing, a creditor who has brought a civil action to collect a debt is obligated to stay proceeds and to reverse, insofar as it practicable, any action taken in violation of the automatic stay. In the case at bar, Credit Central should have recalled its request that the Sheriff serve the Debtor at his place of employment (it did not) and it should have moved to vacate the default judgment (it did not do that either).[2]

Parker has shown that Credit Central knowingly and willfully violated the automatic stay. The next question is whether this case is an appropriate one to impose punitive damages. As set forth above, the Court found that the Credit Central Branch Manager, Kimi Speaks, did not bear any ill will towards Parker. However, it was Credit Central's attempt to maximize collections, while minimizing costs, which resulted in the automatic stay violation. The imposition of punitive damages is appropriate here in that it will encourage Central Central, and perhaps others similarly situated, either to use lawyers to bring suit, or at least to properly supervise its employees. Its practice here, of turning untrained employees loose upon the public is a recipe for disaster. The Court will award actual damages in the amount of $2,000.00, punitive damages in the amount of $10,000.00, and plus attorney's fees. See In re Tucker, 2013 WL 3155419 (Bankr. S.D. Ga. June 20, 2013) (awarding actual and punitive damages for violation of the automatic stay); In re Wallace, 2011 WL 1335822 (Bankr. M.D. Fla. April 5, 2011) (awarding compensatory and punitive damages for repeated violations of the automatic stay); In re WVF Acquisition, LLC, 420 B.R. 902, 914 (Bankr. S.D. Fla. 2009) (awarding punitive damages for

---

[2] The docket in the Dale County proceeding contains an entry, dated November 16, 2012, that Credit Central called and advised that the debt had been paid in full. Presumably, that means that the judgment is satisfied and Parker should not have to contend with it any more. The better approach would have to stay further proceedings, or dismiss the civil action without prejudice.

violation of automatic stay); In re White, 410 B.R. 322, 326-27 (Bankr. M.D. Fla. 2009) (holding that repeated attempts to collect debt after bankruptcy filed was an appropriate case for both compensatory and punitive damages).

The Court is mindful that its award of punitive damages, excluding attorney's fees, is five times the actual damages. The Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996), held that "punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." In conducting is analysis, the Court stated that "perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id., at 575. While an interest rate of 62% may be reprehensible, the Defendant's conduct here is not. However, the Court is concerned that because the actual damages are low, creditors such as Credit Central will not be deterred unless the punitive damages are sufficient to deter such conduct in the future. A small damage award will encourage Credit Central to simply write off the damages as a cost of doing business and go about its business, without any concern that its practices will inevitably result in violations of the automatic stay. Indeed, at trial Credit Central did not make any promises that it would do anything different in the future. One might reasonably argue that an award of punitive damages of only $10,000.00 may not be sufficient to deter future conduct on the part of Credit Central. However, the evidence here did not establish a history of noncompliance. Admittedly, the calculus of how much in the way of punitive damages is sufficient to deter unlawful conduct is difficult to quantify, the sheer number of reported cases on this question, and the number of cases observed by this Court suggest that many creditors are making a conscious decision to violate the

9

automatic stay and write off damage awards as a cost of doing business. Considering all the attendant facts and circumstances here, the Court concludes that an award of punitive damages in the amount of $10,000.00 is appropriate.

### III. CONCLUSION

Credit Central violated the automatic stay because it maintained its suit, caused service of process by a Deputy Sheriff to be made, and default judgment to be entered, all in violation of the automatic stay. Actual damages in the amount of $2,000.00 is appropriate in that Parker should have been free of Credit Central's collection activity once he filed bankruptcy. The Court concludes that this case is appropriate for an award of punitive damages as it is necessary to deter future violations. As the actual damages were only $2,000.00, a multiplier of five, yielding an award of punitive damages of $10,000.00 is appropriate to deter future violations. The Court will enter judgment by way of a separate document and, by way of a separate order, provide a schedule for the submission of a claim for attorney's fees and any objections.

Done this 11th day of February, 2014.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Nicholas Wooten, Attorney for Plaintiff
   Roy C. Dumas, Attorney for Defendant