# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 12-11502-WRS
                                            Chapter 13

MARION PARKER,

         Debtor

MARION PARKER,

         Plaintiff                             Adv. Pro. No. 12-1066-WRS

   v.

CREDIT CENTRAL SOUTH INC.,

         Defendant

## <u>MEMORANDUM DECISION</u>

This Adversary Proceeding is before the Court on the application for attorneys' fees filed by Plaintiff Marion Parker. (Doc. 34). On February 11, 2014, this Court entered judgment in favor of Parker and against Defendant Credit Central South, Inc., awarding damages and attorneys' fees, finding that Credit Central had willfully violated the automatic stay. (Docs. 28, 29). Credit Central objects to Parker's application for fees. (Doc. 50). For the reasons set forth below, Credit Central's objection is overruled and Parker's application for attorneys' fees and expenses is allowed, as requested, in the amount of $30,318.00.

## I. FACTS

Parker brought suit against Credit Central seeking money damages and attorneys' fees for violations of the automatic stay. (Doc. 1). The matter was tried on December 18, 2013, and

judgment was entered in favor of Parker on February 11, 2014.  (Docs. 28, 29).  The Court

awarded attorneys' fees as part of the judgment and provided a schedule for making application

and filing objections.  (Doc. 30).  Credit Central has appealed this Court's judgment to the

District Court.  (Docs. 37, 53).

This Court handed down a Memorandum Decision on February 11, 2014, making

findings of fact and conclusions of law.  (Doc. 28).  Nevertheless, a brief review is appropriate

here.  On August 14, 2012, Credit Central filed a collection suit against Parker in the District

Court of Dale County, Alabama.  Nine days later, on August 23, 2012, Parker filed a petition in

bankruptcy pursuant to Chapter 13 of the Bankruptcy Code.  Parker testified at trial that he had a

telephone conversation with a representative of Credit Central and made them aware of the

bankruptcy filing.  Shortly after that telephone conversation, Credit Central filed a proof of claim

in this bankruptcy proceeding.  (Case No. 12-11502, Claim No. 1, filed August 28, 2012).  As

Credit Central's civil action was filed on the Small Claims docket, Alabama law does not require

a corporation to use a licensed attorney to collect its own debts.  ALA. CODE § 12-12-31(b).  In

the small claims suit, Credit Central was not represented by counsel.  Moreover, at trial, a

representative of Credit Central stated that it was not their practice to use licensed attorneys as it

was more cost effective to use non-attorney employees.  Kimi Speaks, Credit Central's Office

Manager, a non-lawyer, testified at trial that she telephoned the Clerk's office in Dale County and

made them aware of Parker's bankruptcy filing, apparently thinking that this was enough to stay

proceedings.  Needless to say, the telephone call did not accomplish anything.  A few days later,

the Sheriff served process on Parker at his place of employment, causing him anxiety and

embarrassment.  A few weeks after that, default judgment was entered in favor of Credit Central,

2

against Parker.[1]  While Credit Central was inept when it came time to cease the legal process which it had set in motion, it was quite smart when it came time to file a Proof of Claim with the Bankruptcy Court, as it filed a Proof of Claim within a few days of Ms. Speaks' telephone conversation with Parker.[2]  A few days after Parker filed his complaint initiating this Adversary Proceeding, Credit Central found the resources to file a written motion to dismiss, which promptly stopped the small claims suit.  The record does not reflect that Credit Central made any effort to compensate Parker and reach a reasonable settlement.

## II.  LAW

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  This Court entered judgment in favor of Plaintiff Parker and against Defendant Credit Central on February 11, 2014.  (Docs. 28, 29).  The Court awarded Parker attorneys' fees pursuant to its judgment and set a schedule for Parker to file his application and allowing Credit Central time to object.  (Doc. 30).

Credit Central objects to Parker's application for attorneys' fees, contending that Parker is not entitled to any attorneys' fees.  (Doc. 50).  The Court overrules the objection of Credit

---

[1]  Apparently, it is not necessary to file a motion for default judgment in Small Claims cases.  It appears from the record that the Court acted sua sponte.  Rule K, Alabama Small Claims Rules.

[2]  (Case No. 12-11502, Claim No. 1).  It is more than a little ironic that Credit Central was first in line when it came time to file a proof of claim–as that will result in it receiving money.  However, when Parker alleged in his complaint that Credit Central had filed a proof of claim, it pleaded lack of knowledge.  Cf., Doc 1, para. 13; Doc. 5, para. 13.

3

Central for two reasons. First, 11 U.S.C. § 362(k), which provides for a mandatory award of attorneys' fees when a willful violation of the automatic stay is proven, does not limit awards of attorneys' fees to those necessary to stop the violation. Second, even if § 362(k) were so limited, under the facts of this case, the Court would award attorneys' fees necessary to prosecute the adversary proceeding necessary to collect damages and attorneys' fees under the Court's inherent authority and under 11 U.S.C. § 105.

The Court will consider Parker's attorney fee application on its merits. Credit Central contends that attorneys' fees should be awarded only up to the point that the stay violation is remedied and a return to the status quo is achieved. Credit Central would have the court deny Parker the attorneys' fees necessary to prosecute his Adversary Proceeding to actually collect his fees and damages. In addition, Parker argues, incorrectly again, that all of Parker's fees should be denied because all they were incurred after Credit Central violated the automatic stay. As a final matter, the Court will review Parker's fee application <u>sua</u> <u>sponte</u>, on its merits.

**A. ATTORNEY FEE AWARDS UNDER § 362(k) INCLUDE THOSE FEES NECESSARY TO PROSECUTE AN ADVERSARY PROCEEDING TO COLLECT DAMAGES AND ATTORNEYS' FEES**

Section 362(k) permits Parker to recover attorneys' fees necessary to recover damages, and attorneys' fees and costs, including the attorneys' fees necessary to prosecute the adversary proceeding. In those instances where a creditor stops its violation of the automatic stay mid-stream, the fees continue through judgment, appeal and any necessary collection proceedings.

4

The Court will divide its discussion of this question into five parts. In Part 1, the Court will consider the text of § 362(k). In Part 2, the Court will examine precedent from the Eleventh Circuit, published decisions from United States District Court for the Middle District of Alabama, and decisions of this Court. In part 3, the Court will consider the history of § 362(k). In Part 4, the Court will consider <u>Sternberg v. Johnson</u>, 595 F.3d 937 (9th Cir. 2010), and conclude that it is not persuasive and will not be followed. In Part 5, the Court will dispose of a case cited by Credit Central improperly and dispose of Credit Central's argument that attorneys' fees should not be allowed for time spent after it violated the automatic stay.

<u>1. The plain language of § 362(k) provides for a mandatory award for the recovery of attorneys' fees for willful violations of the automatic stay without limitation to a return to the status quo</u>

"The starting point in discerning congressional intent is the existing statutory text." <u>Lamie v. United States</u>, 540 U.S. 526, 533, 124 S.Ct. 1023, 1030 (2004). Section 362(k)(1) provides as follows:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

When a willful violation of the automatic stay is found, the Bankruptcy Court is required to award "actual damages, including costs and attorneys' fees." <u>Id.</u> This is underscored by the command "shall" which is contained in that provision. § 362(k) is unusual in this respect as most statutes providing for attorneys' fees leave some discretion in the trial court to deny

5

attorneys' fees to a successful plaintiff. For example, in civil rights actions, the court "may allow the prevailing party . . . a reasonable attorney's fees (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). Another noteworthy aspect of § 362(k) is that in "appropriate circumstances" the court may award punitive damages. That is, the Court is required to award damages, attorneys' fees and costs and then given discretion to award punitive damages in "appropriate circumstances." The indicates a strong congressional policy in favor of enforcement of the automatic stay.

Had Congress intended to allow fees only to remedy the violation, but not to collect them, it would have provided for attorneys' fees necessary to cause a termination of the violation, and would exclude fees necessary for their recovery. Thus, Congress may have said something like: "a party damaged by a willful violation of the automatic stay shall be awarded attorneys' fees necessary to terminate the violation." However, § 362(k) contains no language which suggests such a limitation. Rather, the statute speaks in terms of recovery, which contemplates all action necessary to reduce to judgment the award and to collect it from the party violating the automatic stay. It is also important to note that one may recover attorneys' fees even it he is not entitled to an award of punitive damages. Thus, the placement of the term "attorneys' fees" relative to the term "actual damages" is to permit a court to allow attorneys' fees in those cases where it chooses not to award punitive damages. This undercuts Credit Central's argument that § 362(k) is not a fee shifting statute. The most natural reading of the statute supports Parker's contention, that he is entitled to fees for time his attorney spent up to and including the recovery of damages, costs and attorneys' fees. On the contrary, the reading of the statute advanced by Credit Central contemplates a limitation which has no basis in the text of the statute.

6

<u>2. It is well established in reported case law in this
District that an award of attorneys' fees for violation
of the automatic stay include fees necessary to
prosecute the adversary proceeding</u>

In a series of decisions squarely on point, the United States District Court for the Middle

District of Alabama, affirmed a decision of this Court awarding attorneys' fees in the amount of

$12,000.00, to collect an award of damages in the amount of $500.00.  <u>Parker v. Pioneer Credit</u>

<u>Co. of Ala. (In re Parker)</u>, 2008 WL 4183436 (M.D. Ala. Sept. 10, 2008) (Thompson, D.J.) (aff'g

2007 WL 1889958 (Bankr. M.D. Ala. June 28, 2007) (Williams, B.J.)).  In <u>Parker</u>, a lender with

a security interest in an automobile obtained relief from the automatic stay to allow it to

repossess the automobile, sell it and apply the proceeds of the sale to the indebtedness, which it

did properly and within the confines of the law.  The lender went farther than that, however,

when it filed a collection suit in state court, obtained a default judgment and then began, but did

not complete, wage garnishment proceedings.  By proceeding against the debtor, as opposed to

proceeding <u>in rem</u> against the automobile, the creditor exceeded the scope of the relief from the

automatic stay granted it and by doing so violated the automatic stay.  The Court entered a

preliminary injunction against the creditor in <u>Parker</u>.[3]  Nevertheless, the debtor was awarded

attorneys' fees necessary to prosecute the adversary proceeding.

After the District Court affirmed this Court on the question of attorneys' fees the creditor

again appealed, next on the question of attorneys' fees on appeal.  The District Court again ruled

against the creditor stating that, "First Southeast's argument is without merit.  It is well-

---

[3] Adv. Pro. 06-1139, Doc. 7, unpublished order July 19, 2006.  (Sawyer, B.J.).

7

established that appellate attorney's fees and costs flow from the creditor's violation of the automatic stay." In re Parker, 419 B.R. 474, 476 (M.D. Ala. 2009) (Thompson, D.J.) (internal citations omitted); see also, Grahm v. Grahm (In re Grahm), 2011 WL 7658757 (Bankr. S.D. Ga. Feb. 25, 2011) (citing Jove and Parker, awarding attorneys' fees to prosecute adversary proceeding and to defend appeal). The Parker cases make clear that § 362(k) provides for the attorneys' fees necessary to remedy the violation of the automatic stay, to prosecute the adversary proceeding and to defend the appeal. Anything less than that would be contrary to both the plain language and the spirit of § 362(k).

In Jove Engineering, Inc., v. Internal Revenue Serv., 92 F.3d 1539 (11th Cir. 1996), the United States Court of Appeals for the Eleventh Circuit considered the propriety of an award of attorneys' fees against the Internal Revenue Service for a violation of the automatic stay. The Eleventh Circuit in Jove concluded that while the Internal Revenue Service could be held liable for damages and attorneys' fees for a violation of the automatic stay, however, because the Internal Revenue Service is not an "individual," § 362(k) [then 362(h)] does not apply. Nevertheless, the Court held that the Internal Revenue Service could be held liable pursuant to 11 U.S.C. § 105(a)(providing that the bankruptcy court may issue any order or process necessary to carry out the provisions of Title 11), and further provided that an award of attorneys' fees must be consistent with 28 U.S.C. § 2412(d)(2)(A)(allowing attorneys' fees against the Government where its litigation position is not substantially justified), and 26 U.S.C. § 7430 (allowing attorneys' fees against the Government in proceedings in connection with taxes) Id.

Jove is instructive here because both 28 U.S.C. § 2412(d)(2)(A) and 26 U.S.C. § 7430, provide for attorneys' fees necessary to prosecute the action to recover fees. Rasbury v. Internal

8

Revenue Serv. (In re Rasbury), 24 F.3d 159, 166 (11th Cir. 1994) (holding that prevailing party may be awarded reasonable litigation costs as well as costs at the administrative level);  Jean v. Nelson, 863 F.2d 759, 779 (11th Cir. 1988) (holding that attorneys' fees are allowed to prosecute action to recover attorneys' fees under 28 U.S.C. § 2412(d)(2)(A)); Baird v. United States (In re Baird), 319 B.R. 686, 690-91 (Bankr. M.D. Ala. 2004) (Williams, B.J.) (holding that attorneys' fees are  allowable for litigation costs but would not be imposed against the Government here because its conduct was not substantially unjustified, citing 26 U.S.C. § 7430).  The point here is that attorneys' fees are routinely allowed to prosecute the litigation to vindicate a party's rights. Jove supports the proposition that attorneys' fees are properly awarded to compensate the wronged party for attorneys' fees incurred in litigation and is inconsistent with the holding in Sternberg.  See, Part II(A)(4), infra.  Moreover, there is nothing in Jove, or any other Eleventh Circuit decision, which would support Credit Central's argument that the Eleventh Circuit would limit an award of attorneys' fees, as was done by the Ninth Circuit in Sternberg.

<u>3.  Nothing in the history of § 362 suggests that awards of attorneys' fees for a violation of the automatic stay are limited to that which is necessary to reinstate the status quo</u>

The statute now codified at § 362(k)(1), was first enacted as § 362(h), in 1984.[4]  Prior to 1984, § 362 was silent on the question of actual damages, costs and attorneys' fees.  Before 1984, the courts treated automatic stay violations like contempt of court proceedings, giving the trial

_____

[4]  Pub. L. 98-353, § 304, added subsec. (h) to 11 U.S.C. § 362.  Enacted July 10, 1984, as the "Bankruptcy Amendments and Federal Judgeship Act of 1984."

9

court discretion to award damages and attorneys' fees.  See, Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308-09 (11th Cir. 1982) (reversing district judge's conclusion that bankruptcy judge's order finding violation of the automatic stay was interlocutory and remanding for further proceedings, including an award of attorneys' fees);  Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47 (2nd Cir. 1977) (holding that violation of stay of former Bankruptcy Rule 11-44 was punishable by contempt, awarding attorneys' fees for the defense of the action brought in violation of the automatic stay and further awarding fees for the prosecution of the contempt proceeding); see also, Elder v. City of Thomasville, Ga. (In re Elder), 12 B.R. 491 (Bankr. M.D. Ga. 1981) (holding that wage garnishment proceeding violated automatic stay and awarded attorneys' fees pursuant to 11 U.S.C. § 105); Edwards v. Pullman Trailmobile (In re Edwards), 5 B.R. 663 (Bankr. M.D. Ala. 1980) (Hopper, B.J.) (holding judgment creditor in contempt for proceeding with judicial execution sale in violation of automatic stay and awarding attorneys' fees to prosecute the contempt action).

By enacting § 362(h) (now § 362(k)), Congress made awards of attorneys' fees mandatory if a willful violation of the automatic stay was found.  Prior to that time, Bankruptcy Courts had discretion as to whether it would award attorneys' fees.  Credit Central's argument, that attorneys' fees should be awarded only to cause the stay to stop but not to prosecute the action to collect either fees or damages, flies in the face of decades of well established precedent. Section 362(h) stood undisturbed from its enactment in 1984, until 2005, when Congress amended this provision, redesignating it § 362(k)(1) and adding (k)(2).[5]  See, Credit Nation

---

[5]  Pub. L. 109-8, § 441, enacted April 20, 2005, as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  Section (k)(2) provides that "if such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the

Lending Services, LLC v. Nettles, 498 B.R. 239 (N.D. Ala. 2013) (affirming bankruptcy court's award of damages and attorneys' fees); Hodge v. The Money Show, LLC (In re Hodge), 367 B.R. 843, 848 (Bankr. M.D. Ala. 2007) (Williams, B.J.) (awarding attorneys' fees for litigation of adversary proceeding to obtain damages for willful violation of the automatic stay); In re Hildreth, 357 B.R. 650 (Bankr. M.D. Ala. 2006) (Sawyer, B.J.) (awarding attorneys' fees and damages for repeated violation of automatic stay, including attorneys' fees to prosecute motion); Smith v. Homes Today, Inc. (In re Smith), 296 B.R. 46, 62 (Bankr. M.D. Ala. 2003)(Sawyer, B.J.); Cox v. Billy Pounds Motors, Inc., (In re Cox), 214 B.R. 635, 646-47 (Bankr. N.D. Ala. 1994)(awarding attorneys' fees to prosecute adversary proceeding to recover damages and attorneys' fees).

The history of the automatic stay, insofar as it concerns remedies for its violation, does not support Credit Central's argument that attorneys' fees should be allowed only to cause the violation to stop but not to prosecute the adversary proceeding to recover damages and attorneys' fees. Prior to 1984, stay violations were remedied as contempt of court, without any such limitation. The 1984 amendments made an award of actual damages and attorneys' fee mandatory in the case of a willful violation, without any indication in the statute that it should be limited as urged by Credit Central. The 2005 amendments provided a limitation in the case of a stay violation based on a good faith belief that the automatic stay had terminated under § 362(h). While the 2005 amendment does not apply to the facts of this case, it demonstrates that Congress

_____

recovery under paragraph of this subsection shall be limited to actual damages." 11 U.S.C. 362(k)(2).

has twice in the past thirty years considered amendments of the automatic stay, yet there is no indication that a limitation along the lines argued by Credit Central was intended.

> 4. The Ninth Circuit's decision in Sternberg v. Johnston, which limits awards of attorneys' fees to that which is necessary to terminate the violation but not to prosecute the adversary proceeding to recover damages and attorneys' fees, is not persuasive and will not be followed here.

Credit Central ignores thirty years of reported cases from the Eleventh Circuit and this District which run contrary to its argument, instead citing a heavily criticized decision from the United States Court of Appeals for the Ninth Circuit, Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010). In Sternberg, the Ninth Circuit denied the award of attorneys' fees under § 362(k) for any fees associated with the ensuing litigation that arose from an automatic stay violation. In other words, any work done by an attorney to stop a stay violation may be recovered, but not any further fees associated with litigating an adversary proceeding. Id. at 948. Sternberg based this analysis largely on the basis that it saw actions to recover damages for automatic stay violations as ordinary damage actions. Id. at 947 (looking to a dictionary definition of "actual damages" to discern its plain meaning). This Court disagrees with the result of Sternberg for two reasons. First, its legal reasoning is unpersuasive, with misplaced reliance on the American Rule and irrelevant state court decisions, and it is contrary to existing Circuit precedent and the great weight of lower court authority. Second, the Ninth Circuit's policy analysis in Sternberg is incorrect, and the facts of this present case demonstrate the potential harm to a debtor if Sternberg were followed.

12

In denying the award of fees under § 362(k), the Ninth Circuit took an unpersuasive legal path. Sternberg looks largely to the "American Rule," or, rather, the idea that "unless Congress provides otherwise, parties are to bear their own attorneys fees." Id. at 945-46 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 114 S.Ct. 1023, 1033 (1994)). In reaching such an interpretation of § 362(k), the Ninth Circuit in Sternberg ignored the long history of automatic stay litigation which holds that proceedings to redress a violation of the automatic stay are in the nature of contempt and not stand alone civil actions. Id. As stated by a Bankruptcy Judge in the Northern District of Ohio:

> This court disagrees with the holding and unpersuasive reasoning in Sternberg. The Ninth Circuit dubiously found that the straightforward language of § 362(k) is ambiguous, then looked for guidance to a law dictionary and examples of state law malpractice and bad faith causes of action not created by any federal statute. This court does not find the language of the statute ambiguous or in need of odd parsing of simple language or resort to a dictionary or the guidance of Tennessee, California or Colorado state common law to inform the intent of Congress in § 362(k).

Grine v. Chambers (In re Grine), 439 B.R. 461, 470 (Bankr. N.D. Ohio 2010). The First Circuit bankruptcy appellate panel cited Grine with approval. Duby v. United States (In re Duby), 451 B.R. 664, 675 (1st Cir. B.A.P. 2011). The Ninth Circuit's reference to the "American Rule" in Sternberg is inappropriate because the American Rule applies to civil litigation in general. As discussed in Part II(A)(3), supra, litigation involving violations of the automatic stay is in the nature of contempt proceedings, where courts have frequently awarded the complaining party his attorneys' fees, notwithstanding the American Rule. The Ninth's Circuit reference to the American Rule in Sternberg is misplaced.

13

The cases cited by Sternberg to support its analysis are largely irrelevant to the issue of fees under § 362(k). To support its holding that § 362(k) does not allow attorneys' fees to collect damages, Sterngerg cited three state court decisions involving attorney malpractice, John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W. 2d 529 (Tenn. 1998), the breach of the covenant of good faith as it pertains to an insurance policy, Brandt v. Superior Court, 37 Cal. 3d 813 (Cal. 1985), and a suit involving malicious prosecution, Tehcnical Computer Services, Inc. v. Buckley, 844 P.2d 1249 (Colo. App. 1992). None of these state court cases provide support for the proposition that one who brings suit pursuant to § 362(k) may not recover attorneys' fees for time spent collecting damages and attorneys' fees. That other courts have dealt with the awarding or non-awarding of attorney fees in litigation under other statutes and theories of law has nothing to do with the violation of the automatic stay in a bankruptcy case, and none of these cases have any relevance to the question of a proper interpretation of § 362(k).

The panel in Sternberg, while looking to state court decisions which were wholly inapposite, also barely acknowledged Ninth Circuit precedent allowing attorneys' fees in a case involving an award of attorneys' fees under § 362(k). Sternberg at 946, n. 4 (citing Dawson v. Washington Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139 (9th Cir. 2004)). In Dawson, the Ninth Circuit affirmed an award of attorneys' fees for a violation of the automatic stay, and remanded for further proceedings. Dawson, at 1152. The formula prescribed in Dawson included an allowance for fees necessary for the prosecution of the adversary proceeding and did not limit the fees to just those necessary to stop the violation. Id. On remand, the Bankruptcy Court addressed the issue again, removing any doubt, that a limitation of an award of attorneys' fees to only those necessary to stop the violation is not appropriate.

14

As noted above, the Bank contends that Mrs. Dawson may not recover any fees for the services of Dell'Ario and his associates in this action because the stay violation–i.e., the delay in rescinding the February 8, 1996 foreclosure sale–ceased long before this action was brought, and the purpose of this action was solely to recover damages. In support of this contention, it cites McHenry, McLaughlin, and Skeen. Mrs. Dawson notes that the Bank cited McHenry for this contention during the initial phase of this litigation and that the Court found the authority distinguishable. She notes that an award of actual damages, including attorneys' fees, is mandatory under 11 U.S.C. § 362(h).[6]

Dawson, 346 B.R. 503, 516 (Bankr. N.D. Cal. 2006) (on remand). The Bankruptcy Court awarded Mrs. Dawson attorneys' fees in the amount of $156,818.75, all of which was for fees which were all incurred after the violation of the automatic stay had ceased. Dawson, 346 B.R. 503, 519. The Bankruptcy Court in Dawson, pursuant to the mandate of the Ninth Circuit in Dawson, rejected Washington Mutual's argument, which is the same argument made in Sternberg, and the same argument made by Credit Central here.

Further, Sternberg conflicts with existing Circuit precedent, which is buttressed by settled lower court authority. The United States Court of Appeals for the Fifth Circuit has ruled, contrary to the Ninth Circuit's ruling in Sternberg, that attorneys' fees necessary to prosecute an action to collect attorneys' fees and damages may be awarded pursuant to § 362(k). Young v. Repine (In re Repine), 536 F.3d 512, 522 (5th Cir. 2008). The great weight of lower court authority favors the Fifth Circuit's holding in Repine. See eg., Credit Nat'l Lending Services, LLC v. Nettles, 489 B.R. 239, 247-49 (N.D. Ala. 2013) (affirming bankruptcy court award to vindicate the automatic stay, citing Grine); Burell v. Auto-Pak-USA (In re Burell), 2012 WL

_____

[6] Prior to 2005, § 362(k)(1) was denominated § 362(h). See, Section 441 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8.

15

3727130 (S.D. Tex. Aug. 27, 2012) (affirming Bankruptcy Court's award of attorneys' fees to

prosecute action and recognizing split between the Fifth and Ninth Circuit); In re Webb, 472

B.R. 665 (6th Cir. B.A.P. Apr. 9, 2012) (allowing attorneys' fees to file litigation where

necessary to afford a complete remedy to the debt, citing Grine); Duby, 451 B.R. at 676-78

(affirming Bankruptcy Court's award of attorneys' fees to bring action and criticizing the Ninth

Circuit's holding in Sternberg); Thomason v. Chestatee Cmty. Ass'n, Inc., (In re Thomason), 493

B.R. 890, 902 (Bankr. N.D. Ga. 2013) (allowing attorneys' fees for litigation to collect damages

and attorneys' fees); Grine, 439 B.R. at 469-70 (holding that debtor who prevailed on action to

enforce automatic stay was entitled to attorneys' fees necessary to bring action and criticizing the

holding in Sternberg).

Additionally, this Court disagrees with Sternberg's policy analysis. As stated in Grine:

> The Ninth Circuit's statement that "permitting a debtor to collect
> attorney fees incurred in prosecuting a damages action would
> further neither the financial nor the non-financial goals of the
> automatic stay," Sternberg, 595 F.3d at 948, is simply wrong. The
> automatic stay and the breathing room it affords from creditor
> collection activities play a vital and fundamental role in
> bankruptcy.

Grine, at 470. Grine correctly noted that without the allowance of attorneys' fees for §362(k)

litigation,

> individual debtors' attorneys would be less likely to pursue vindication of the stay
> and their clients' rights thereunder, both because their bankrupt clients lack the
> money to pay hourly fees and because of the oftentimes relatively small amount of
> probable damages, as in this case, making a contingency fee wholly impracticable.

Id. Likewise, the First Circuit bankruptcy appellate panel seconded these sentiments. Duby at

676.

16

The facts of this case provide further support for the policy argument advanced in <u>Grine</u> and <u>Duby</u>. Credit Central served legal process on Parker and took a default judgment against him after he had filed bankruptcy and, in doing so, violated the automatic stay. (Doc. 28). It was a simple case with very little dispute as to anything but the amount of damages sought. Yet, Credit Central denied or alleged lack of knowledge as to almost every material fact alleged by Parker in his complaint. (Docs. 1, 5). For example, Credit Central either denied or alleged lack of knowledge that it was sent notice of Parker's bankruptcy case, that it filed a proof of claim in Parker's bankruptcy case, and that it served the Debtor with process in its State Court collection action. (Doc. 5, para. 12-15). Credit Central was sent notice of Parker's bankruptcy filing on August 26, 2013, (Doc. 1, para. 12), yet it pleaded lack of knowledge. (Doc. 5, para. 12).[7] On August 28, 2013, two days after Notice of Commencement of the Case was mailed, Credit Central filed a Proof of Claim with this Court. Yet, it pleaded lack of knowledge as to whether it had filed a Proof of Claim. (Doc. 5, para. 13). Incredibly, Credit Central pleaded lack of knowledge to Parker's allegation that he had signed a promissory note in favor of Credit Central. (Doc. 1, para 8; Doc. 5, para. 8). Certainly, Credit Central knew that Parker owed it money pursuant to a note, as it was the very basis of why they were suing him in small claims court. Ironically, Credit Central attached a copy of the promissory note–the one it claims not to know about–to its proof of claim. (Case No. 12-11502, Claim No. 1).

---

[7] This Court's records reflect that a Notice of Commencement of Case was sent to Credit Central's office in Ozark, Alabama on August 26, 2012. (Case No. 12-11502, Doc. 12). A copy of Parker's Chapter 13 was also sent to the same address on the same date. (Case No. 12-11502, Doc. 14).

17

Case 12-01066   Doc 64   Filed 05/15/14   Entered 05/15/14 14:16:28   Desc Main
Document    Page 17 of 26

As a result of Credit Central's denials, Parker was forced to undertake time consuming and expensive discovery, (<u>See</u>, Docs. 10, 16-18), including filing a motion to compel. (Docs. 25, 26). Due to Credit Central's "scorched earth" tactics in this Adversary Proceeding, Parker's lawyer spent 18 months and $30,000.00 worth of time to prove a relatively minor violation of the automatic stay which was not disputed at trial. (Doc. 34).

If the only issue truly in dispute was the amount of damages, Credit Central should have admitted the underlying factual allegations and limited the trial to the amount of damages. <u>See</u>, Rule 9011(b), Fed. R. Bankr. P. (by signing pleading one certifies that reasonable inquiry has been made and factual assertions have an evidentiary foundation); <u>see also</u>, Rule 3.1, Ala. R. Pro. Conduct (a lawyer shall not assert a position when the lawyer knows it would serve merely to harass another). When Credit Central failed to admit that Parker was indebted to it under a promissory note, that they had filed a proof of claim and that they had served process upon him, they almost certainly violated Rule 9011(b) and their lawyer likely violated Rule 3.1 of the Alabama Rules of Professional Conduct. Had Credit Central wanted to keep fees to a minimum–both their own and Parker's–they should have admitted what they did, and litigated only damages. They also could have avoided the imposition of punitive damages had they promised to make changes in the way they collect debts so as to minimize the chances of a future violations of the automatic stay–which they would not. Moreover, if they felt that Parker was demanding too much by way of damages, they could have made an offer of judgment, thereby cutting off all fees and costs after the offer is made. Rule 68, Fed. R. Civ. P., as made applicable by Rule 7068, Fed. R. Bankr. P. In short, Credit Central did nothing which could have minimized attorneys' fees and their litigation strategy was calculated to be time consuming and

18

burdensome to Parker. Creditors who violate the automatic stay and behave as Credit Central did here would not be deterred if <u>Sternberg</u> were adopted and attorneys' fees necessary to prosecute the adversary proceeding were not awarded.

Considering the backdrop of typical automatic stay violations, the Court is not blind to the potential for bad attorney behavior under this Court's interpretation of § 362(k) fees allowance. Most debtors who file bankruptcy do so under pressure from creditors taking a variety of action to collect their debts – anything from telephone calls, letters, collection suits, foreclosures and vehicle repossessions to name a few. In most cases, creditors will be in the process of taking action to collect their debts, which would have been legal but for the automatic stay immediately imposed by § 362 when the debtor files a petition in bankruptcy. There is necessarily some delay between the moment of a bankruptcy filing to the actual receipt of notice of the bankruptcy filing, and there may also be delay where the creditor is an institution who must communicate this fact to its employees and agents. There are inevitably many instances where a creditor unwittingly violates the automatic stay because some actions is taken before the communication within the institution takes place. This Court expects debtors and their lawyers to make a reasonable effort to remedy stay violations before filing a complaint initiating an Adversary Proceeding.[8] It may be of concern that overly aggressive debtor's lawyers will litigate

---

[8] In <u>Norman v. Applied Card Sys., Inc., (In re Norman)</u>, 2006 WL 2818814, *1 (Bankr. M.D. Ala. Sept. 29, 2006), this Court stated that: "[h]aving said this, the Court is troubled that the debtor has resorted, apparently in the first instance, to this Court for redress and does not appear to have availed himself of remedies under the Fair Credit Reporting Act." In another setting involving the automatic stay, the Court admonished a debtor's lawyer for resorting to the court to enforce the automatic stay without first attempting to resolve things directly with the creditor. <u>In re Briskey</u>, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001). "The Debtor's resort to a 'Motion for Release of Garnishment' in the first instance, without making an attempt to resolve the matter without the Court's intervention is inappropriate." <u>Id.</u> The Court went on to say "it is

Case 12-01066    Doc 64    Filed 05/15/14    Entered 05/15/14 14:16:28    Desc Main
Document        Page 19 of 26

insubstantial stay violation cases to generate attorneys' fees. By requiring a debtor's lawyers to properly examine their cases and carefully scrutinize the debtor's evidence, the Court can filter out insubstantial cases.

> ### 5. Credit Central misapplies the rule of Sternberg to this case and misstates serveral reported cases in support of its position

Credit Central argues that none of the requested fees should be allowed because they were not incurred in an effort to enforce the automatic stay. (Doc. 50, p. 2). Specifically, it states that "the first date for legal services claimed by Plaintiff is well after Mr. Parker was served with the complaint in the underlying action." (Doc. 51, p. 5) (referring to the small claims suit). The violation of the automatic stay was not remedied until after the complaint initiating this Adversary Proceeding was served on Credit Central. Credit Central seems to miss the point that by serving process on Parker, they violated the automatic stay, which made this Adversary Proceeding necessary. That all of the fees were incurred after the date Credit Central served process in its civil action is hardly surprising. There would be no reason to attempt to remedy the stay violation before it happened.

To be sure, most-but not all-of the fees claimed by Parker were incurred after Credit Central dismissed the small claims action, however that does not mean that the services were not necessary. Having demonstrated that they would violate the automatic stay on one occasion,

---

expected that creditors will promptly comply with the automatic stay as soon as they receive knowledge of a bankruptcy filing." Id.

there is no reason to think that they would not do it again.[9]  Credit Central states that "[n]ow Mr. Wooten asks for attorneys' fees for allowing his client to have a judgment taken against him." (Doc. 50, p. 5).  This is a blatant misrepresentation of the facts of this case.  The automatic stay was violated when Credit Central maintained its civil suit against Parker, serving process and taking a default judgment against Parker.  Credit Central's claim that Parker, or his lawyer Wooten, somehow acquiesced in this is disingenuous.  The evidence was undisputed at trial that Credit Central was sent timely notice of the bankruptcy filing and its Office Manager Kimi Speaks spoke with Parker by telephone.  Credit Central offered no evidence at trial showing that either Wooten or Parker in any way acquiesced in the judgment entered against Parker.  Neither Wooten nor Parker baited Credit Central into this automatic stay violation.

Credit Central cites the case of In re Miller, 447 B.R. 425 (Bankr. E.D. Pa. 2011), claiming that it followed Sternberg, in support of its argument that no fees should be awarded here.  (Doc. 50, p. 4)  Credit Central's argument is misplaced.  First, Miller does not cite Sternberg.  Second,  Miller cites Grine, which criticized Sternberg, suggesting at least that the court in Miller was not adopting Sternberg.  Miller, 447 B.R. at 434.  The holding in Miller is carefully limited to its facts, concluding that under the facts of that case, there were no actual damages and that the debtors failed to show that reasonable or necessary attorneys' fees should be awarded.  Miller, 447 B.R. at 435.  In Miller, the creditor voluntarily ceased its violation of the automatic stay voluntarily months before suit was filed.  The violation in Miller consisted of

---

[9]  Credit Central may well be a frequent violator of the automatic stay.  See, Humphrey v. Credit Central South, LLC, (In re Humphrey), Case No. 14-10372, Adv. Pro. No. 14-1019, in the United States Bankruptcy Court for the Middle District of Alabama.  (Complaint filed March 19, 2014).

three monthly statements mailed the first three months after the debtor filed bankruptcy. The debtor in Miller made no complaint of the violation until after the creditor filed suit alleging the nondischargeability of the debt. Had the Court in Miller intended to follow the ruling in Sternberg, it could have simply held that attorneys' fees are never allowed once the violation of the automatic stay stops. The Bankruptcy Judge in Miller cited approximately a dozen cases, but he did not cite Sternberg. The decision of Miller does not follow Sternberg and more importantly, it does not support Credit Central's argument here.

### B.  THIS COURT WOULD AWARD ATTORNEYS' FEES UNDER ITS INHERENT AUTHORITY, OR UNDER § 105, EVEN IF IT WAS NOT REQUIRED TO DO SO UNDER § 362(k)

Even if this Court was not required to award attorneys' fees for Parker's litigation expenses under § 362(k), it would nevertheless exercise its discretion to do so. Jove at 1553; Edwards v. Pullman Trailmobile (In re Edwards), 5 B.R. 663 (Bankr. M.D. Ala. 1980); see also, 11 U.S.C. § 105. Relying on its inherent authority, and § 105, this Court would award Parker attorneys' fees for two reasons. First, Credit Central has litigated its case in bad faith. As set forth in Part II(A)(4), supra, and Part II(C), infra, Credit Central denied, or alleged lack of knowledge, to almost all of the factual allegations made by Parker. This was a simple case with very few material facts actually in dispute. Credit Central should have been honest and disputed only what was legitimately in dispute. Credit Central's actions, such alleging lack of knowledge that it filed a claim in the bankruptcy proceedings, or that Parker had signed a promissory note,

22

was done in bad faith and would provide a good reason to impose fees, if they were not otherwise to be awarded.

The second reason that fees should be awarded under the Court's inherent authority is that Credit Central made its policies in a calculated manner, knowing that the automatic stay could likely be violated. It uses unqualified, non-lawyer advocates in small claims courts, knowing that stay violations–and probably other violations of the law–are inevitable. Their in house lawyer stated at trial that this is because lawyers cost more money. In many cases it costs more money to comply with a law than to violate. That a violation of the law results from a decision to save money, rather than a decision to violate the law, does not change the final analysis. Moreover, by imposing attorneys' fees the Court increases the costs borne by Credit Central, which will affect their calculations. An award of attorneys' fees will encourage them to use licensed lawyers and discourage violations of the automatic stay.

## C. THE FEES REQUESTED BY PARKER ARE REASONABLE AND ARE ALLOWED AS FILED

The Court notes that Credit Central has objected to Parker's attorney fee application insofar as they object to any fees after that point in time when the violation of the automatic stay was remedied. For lack of a better description, the Court will refer to that as a Sternberg objection. Credit Central did not parse through the application and identify any of the requested time as unreasonable or unnecessary. The Court will exercise its inherent authority to review the application on its merits. In re Ross, 94 B.R. 210 (M.D. Ga. 1988); In re Jones, 494 B.R. 569, 573 (Bankr. M.D. Fla. 2013); In re Key Largo Land, Inc., 158 B.R. 883 (Bankr. S.D. Fla. 1993).

Section 362(k) does not specify standards to be used by a court in reviewing an application for fees, however, this Court has previously held that in such a case, it is appropriate to apply the standards of 11 U.S.C. § 330, in making an award of fees under § 362(k). Parker v. Pioneer Credit Co. of Ala., Inc. (In re Parker), 2008 WL 4183436 (M.D. Ala. Sept. 10, 2008).

> [T]he court should use the lodestar approach. The lodestar is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area. In determining the allowable hours and rate that make up the lodestar, "a judge must 1) determine the nature and extent of the services rendered; 2) determine the value of those services; and 3) consider the factors laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and explain how they affect the award.

Id. (internal citations omitted). Reviewing Parker's fee application, his lawyer Nick Wooten has billed 62.73 hours at $350 per hour, for attorneys' fees of $21,055. In addition, he bills 66.90 hours for a paralegal at $125 per hour, for fees of $8,362.50. As a final matter, there are costs and expenses of $1,206.77. As for Wooten's rate of $350.00 per hour, the Court finds that under the circumstances, that rate is appropriate. At first glance, one might argue that $350 per hour is high for the Middle District of Alabama. However, the hourly rate charged must adequately compensate counsel and should be "no less and no more than fees received for comparable non-bankruptcy work." Id. In approving the award, the Court considers the risk taken by a lawyer such as Wooten. Absent an award of fees, his client will almost certainly be unable to pay. The risk of nonpayment or noncollection of fees is significant. Lawyers who represent banks and well-heeled corporations send a bill every month which is promptly paid. Not so for the lawyer representing consumers who are down on their luck. A second factor is the delay. This Adversary Proceeding was filed in October of 2012. Considering the risk accepted by Wooten

24

and the delay occasioned by Credit Central's litigation tactics, an hourly rate of $350.00 is reasonable.

The Court has some reservations as to the extensive use of a paralegal, who billed 66.90 hours at $125 per hour. Wooten argues that his use of a paralegal promotes efficiency as his hourly rate is less. There is always some concern that the paralegal may be billing for secretarial functions. At the other extreme, there is sometimes a concern that the paralegal may be improperly practicing law. Having considered the paralegal's billing, the Court concludes that it is appropriate.

First considering the bill for attorneys' fees in total, one cannot help being struck by the size of the bill relative to the complexity of this case. This case is both legally and factually quite simple, with very little in dispute. That the Debtor's lawyer is billing $30,000.00, and presumably Credit Central was billed by its lawyer a similar amount, is astounding. Indeed, the only legal issue of any complexity here is Credit Central's <u>Sternberg</u> objection which relates to attorneys' fees and not the trial of the automatic stay violation. As set forth in Part II(A)(4), Credit Central denied or plead lack of knowledge as to almost everything. In addition, review of Wooten's bill shows that a great deal of time was spent on discovery.[10] As Credit Central did not dispute anything of substance at trial, except for a small damages claim by Parker, one searches for a reason for all of this.

_____

[10] Beginning with the entry of 6/6/2013, through 9/1/2013, the paralegal lists 27 discrete entries, totaling 41.9 hours for discovery. During the same period, Wooten lists 18 discrete entries for a total of 24.5 hours of attorney time for discovery. This does not include trial preparation, research and other tasks which do not directly relate to discovery. (Doc. 34, Ex. A-2).

25

But for Credit Central's mendacity and utter lack of good faith, the time spent by Wooten in this case would be excessive. Because they denied almost everything, admitted almost nothing, forced Parker to prove everything, even opposing Parker's discovery efforts, Wooten was forced to make a mountain out of a proverbial molehill. The considerable fees charged in this case are solely attributable to the intransigence of Credit Central and its lawyer. For these reasons, the fees requested by Parker are allowed as filed.

### III. CONCLUSION

The gist of Credit Central's objection to fees is that attorneys' fees should not be awarded for any time spent to prosecute the adversary proceeding and collect the fees after the stay violation was corrected, citing the Ninth Circuit decision in <u>Sternberg</u>. This Court will not follow <u>Sternberg</u> as it is contrary to the plain language of § 362(k), contrary to decisions handed down by the Eleventh Circuit, and the United States District Court for the Middle District of Alabama, as well as a number of reported decisions handed down by this Court. Moreover, <u>Sternberg</u> is bad policy. It would encourage lawyers representing creditors who violate the automatic stay to act in bad faith, as the lawyer for Credit Central has here, since the debtor's lawyer would not have the resources or incentive to remedy stay violations. Such a policy undermines the automatic stay and the debtor's fresh start. For these reasons, the objections of Credit Central are overruled and the application for fees filed by Parker is allowed as filed. The Court will enter a separate order awarding attorneys' fees.

Done this 15th day of May, 2014.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiff
   Roy C. Dumas, Attorney for Defendant

26