IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARION PARKER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:14-CV-311-WKW |
| | ) | |
| CREDIT CENTRAL SOUTH, INC., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## MEMORANDUM OPINION

Appellant Credit Central South, Inc., appeals the orders of the United States Bankruptcy Court for the Middle District of Alabama ("the Bankruptcy Court") in Adversary Proceeding No. 12-1066-WRS, which found that Credit Central violated the automatic stay resulting from Appellee Marion Parker's Chapter 13 bankruptcy petition. *See* 11 U.S.C. § 362(a), (k). The Bankruptcy Court awarded Mr. Parker a judgment for actual damages for emotional distress and punitive damages (Docs. # 2-14, 2-15) and entered a separate order awarding attorney's fees expended to prosecute the adversary proceeding. (Docs. # 7-1, 7-2.) Credit Central's timely appeal of the judgment and order has been fully briefed. (Docs. # 6, 13, 18, 21.) Upon consideration of the parties' arguments, the record, the Bankruptcy Court's reasoned memorandum decisions, and relevant law, the court concludes that the judgment (Doc. # 2-15) awarding damages is due to be affirmed in part and

vacated and remanded in part, and the attorney's fee order (Doc. # 7-2) is due to be affirmed.[1]

# I.  JURISDICTION AND VENUE

This court has jurisdiction to hear appeals from orders of the Bankruptcy Court.  28 U.S.C. § 158(a).  Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."  *Id.*  Jurisdiction and venue are uncontested.

# II.  STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and its legal conclusions and any mixed questions of law and fact are reviewed *de novo*. *Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007); *Christopher v. Cox (In re Cox)*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007). A finding of fact "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).

---

[1] All references in this opinion to page numbers are to those pages assigned by CM/ECF in the instant proceeding as opposed to page numbers generated by the parties or by CM/ECF in the Bankruptcy Court.

2

"[A]n award of attorneys' fees in a bankruptcy proceeding will be reversed only if the court abused its discretion." *Hatcher v. Miller*, (*In re Red Carpet Corp. of Panama City Beach)*, 902 F.2d 883, 890 (11th Cir. 1990). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.*

### III. BACKGROUND

Mr. Parker owed a $1,200 debt to Credit Central. Credit Central lawfully attempted to collect the debt by suing Mr. Parker in Dale County District Court on August 14, 2012. Credit Central utilized non-attorneys in its Ozark, Alabama office to file the suit. On August 23, 2012, Mr. Parker filed for bankruptcy protection under Chapter 13 and orally informed Credit Central that he had done so. Credit Central also received written notice of the bankruptcy case from the Bankruptcy Court. Credit Central filed a proof of claim in the bankruptcy case on August 28, 2012. (*See* Claim # 1, Claims Register, Bankruptcy Case No. 12-11502.)

On September 29, 2012, over a month after filing for bankruptcy relief, Mr. Parker was served with process of the Dale County suit at his place of work by a deputy sheriff. On October 25, 2012, two months after filing for bankruptcy relief,

3

a default judgment was entered against him, apparently *sua sponte*.[2]   Mr. Parker

initiated this adversary proceeding on October 26, 2012, for Credit Central's

violation of the automatic stay, and on November 2, 2012, Credit Central finally

filed a written motion to dismiss the suit, which the Dale County District Court

granted two weeks later.   In response to the adversary proceeding complaint,

Credit Central denied practically every allegation, including the existence and

amount of Mr. Parker's underlying debt, its receipt of notice of the bankruptcy

case, and that it had filed a proof of claim for that debt, or that it has served Mr.

Parker with process in the state court suit.  Discovery followed.

The Bankruptcy Court held a trial on December 18, 2013, during which Mr.

Parker testified that he had not suffered psychological harm and had not sought

medical treatment, but that he was embarrassed to have been served with process at

work and that he remained "upset" for "a few days."  (Doc. # 2-25, at 20.)

The branch manager of Credit Central's Ozark office, Kimi Speaks, testified

at trial, explaining that she called the Dale County District Court twice after

becoming aware of Mr. Parker's bankruptcy.  Ms. Speaks was informed by a court

clerk that the case would not be dismissed until *Mr. Parker's* counsel provided the

---

[2] (*See* Doc. # 7-1, at 3 (explaining that the Alabama rules for small claims courts permit this).)

court with notice of the bankruptcy.  Ms. Speaks called[3] the court to request dismissal of Credit Central's suit three more times – first, after the district court unsuccessfully attempted serving Mr. Parker with process, next after successfully serving him with process, and again after entering the default judgment.[4]

The Bankruptcy Court entered a judgment in favor of Mr. Parker and awarded $2,000 in actual damages and $10,000 in punitive damages in the adversary proceeding.  (Docs. # 2-14, 2-15.)  It announced its intent to award attorney's fees by separate order.  (Doc. # 2-15.)  After reviewing Mr. Parker's request for fees and Credit Central's objections, the Bankruptcy Court awarded him $30,318 in attorney's fees (Doc. # 7-2), a sum that the Bankruptcy Court found reasonable in view of the risk assumed by counsel for Mr. Parker and in view of Credit Central's "mendacity and utter lack of good faith."  (Docs. # 7-1, at 26.)  Credit Central timely appeals the judgment and the order awarding fees.

---

[3] Of course, an attorney may occasionally call court clerks for procedural information or other non-pleading issues.  A non-attorney calling court clerks is a non-action legally.  Even in small claims court, it takes a piece of paper –a pleading or motion or even a letter – to brake litigation momentum, a fact most attorneys know.

[4] Hence, Credit Central attributes fault to the Dale County District Court and its staff rather than to itself.  Credit Central emphasizes that it is lawful for corporate entities to represent themselves in state district court without the assistance of an attorney and is unapologetic that it purposefully uses non-lawyers to prosecute small claims to reduce legal costs.  Credit Central also blames Mr. Parker and his attorney for not making efforts to ensure that the small claims collection suit was stayed, even while they knew it remained pending following Mr. Parker's filing of his bankruptcy petition.  Regardless of where the blame rests, competent counsel would have avoided, on penalty of malpractice, the serious consequences Credit Central now faces over a $1,200 debt.

5

# IV.  DISCUSSION

According to Credit Central, the Bankruptcy Court erred in finding that it willfully violated the automatic stay, in awarding damages for Mr. Parker's emotional distress, in awarding attorney's fees, and in awarding punitive damages. These arguments are addressed in turn.

## A.    Finding that Credit Central Willfully Violated the Automatic Stay

Credit Central asserts that it did not knowingly and willfully violate the automatic stay.  "A willful violation simply requires [a creditor's] knowledge of the automatic stay and an intent to perform the actions which violated the automatic stay."  *Credit Nation Lending Servs., LLC v. Nettles*, 489 B.R. 239, 247 (N.D. Ala. 2013) (internal quotation marks omitted).  The Bankruptcy Court's conclusion that Credit Central's stay violation was willful arguably is a mixed question of fact and law.  *See Talley v. Ala. Dep't of Pub. Safety*, 472 F. Supp. 2d 1323, 1325 (N.D. Ala. 2007).  To the extent that Credit Central disputes the Bankruptcy Court's application of the law to the facts, the court agrees that there was a willful violation under 11 U.S.C. § 362(k)(1).  It was proper to find a willful violation because Credit Central knew about Mr. Parker's bankruptcy petition and

allowed its state court suit to progress for over two months before effectually staying or dismissing that litigation.[5]  The finding is due to be affirmed.

## B.   Award of Actual Damages for Emotional Distress

Credit Central argues that Mr. Parker was not injured by a violation of the automatic stay, and therefore, actual damages were not due to be awarded.  The Eleventh Circuit has recently held that "emotional distress damages fall within the broad term of 'actual damages' in § 362(k)."  *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014).[6]  But "at a minimum, to recover 'actual' damages for emotional distress . . . , a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay."  *Id.*  "Fleeting or trivial anxiety or distress" is not "significant" emotional distress.  *Id.* at 1272.[7]  Measuring the evidence in *Lodge* by this standard, the Circuit held that the plaintiffs failed to show significant emotional distress.  Specifically, plaintiffs "offered only

---

[5]  In accordance with this court's holding that there was a willful violation of the automatic stay, Credit Central's related objections to the Bankruptcy Court's award of damages and attorney's fees, discussed *infra*, are rejected to the extent that Credit Central asserts that no damages are due for lack of a willful violation of the automatic stay.

[6]  The *Lodge* opinion issued a few months after the Bankruptcy Court entered its memorandum decision in favor of Mr. Parker.

[7]  As one bankruptcy court has recently opined, post-*Lodge*, "mere aggravation, indignation and annoyance, or being 'upset,' are likewise insufficient as a matter of law." *Morris v. Wells Fargo, N.A.* (*In re Morris*), 514 B.R. 658, 668 (Bankr. N.D. Ala. 2014).

7

generalized evidence that they were 'stressed out' and had difficulties interacting with one another and their children.  [The husband-plaintiff] added that he had 'trouble selling automobiles' and that his coworkers were avoiding him." *Id.*

Citing *Lodge*, Credit Central asserts that Mr. Parker's reported temporal embarrassment and feelings of anxiety are not "significant," and further, that Mr. Parker's emotional distress was caused by other factors.

In response, Mr. Parker contends that *Lodge* did not disturb the emotional distress damages standard theretofore applied in this district, *i.e.*, the Ninth Circuit's standard in *Dawson v. Wa. Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139 (9th Cir. 2004).  *See McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 848 (M.D. Ala. 2014) (Watkins, C.J.) (following *Dawson*).  Further, Mr. Parker notes that the Eleventh Circuit cited *Dawson* extensively in *Lodge* and adopted a nearly identical iteration of the standard for proving emotional distress damages.  *See Lodge*, 750 F.3d at 1271 (citing *Dawson*'s test before pronouncing its own).  Mr. Parker admits that "the Bankruptcy Court did not cite the *Dawson* standard in awarding damages to [Mr.] Parker[,]" but he argues that "the facts recited [by the Bankruptcy Court] show that [it] considered the factors."  (Doc. # 18, at 48.)  Mr. Parker asserts that, in the absence of clear error, this court may not disturb the Bankruptcy Court's factual findings that Mr. Parker's claims of emotional distress were "credible" and "sincere."  (Doc. # 2-14, at 3.)

8

In reply, Credit Central contends that "nowhere in the [Bankruptcy Court's] decision does [that court] apply [its factual] findings to its legal conclusions." (Doc. # 21, at 8.)   Further, Credit Central objects that Mr. Parker's testimony is legally insufficient to support the award of damages because his testimony was "uncorroborated."   (Doc. # 21, at 8, 13.)[8]   It further cites the Bankruptcy Court's justification of its damages award (*see* Doc. # 2-14, at 6), as an indication that the court imposed actual damages on the basis of Credit Central's perceived misconduct, not on the basis of Mr. Parker's showing that he suffered significant emotional distress.

The Bankruptcy Court cannot be faulted for not following a standard yet to be enunciated by the Eleventh Circuit.   Nonetheless, the award of actual damages cannot stand on appeal if the facts do not satisfy the legal standard in *Lodge*.   The Bankruptcy Court's factual finding that Mr. Parker's testimony was credible and sincere is not clearly erroneous, but whether the award of actual damages was appropriate is a mixed question of fact and law subject to *de novo* review.   The issue is whether Mr. Parker's reported emotional suffering was substantial enough to cross the threshold from the realm of the "fleeting or trivial" to the "significant."

---

[8] Because this issue was raised for the first time in the reply brief, the court will not consider it.  *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).  However, the court notes that the Eleventh Circuit does require some sort of evidence corroborating a debtor's testimony that he experienced emotional distress, except in cases "where the [stay] violator engaged in egregious conduct and significant emotional distress is readily apparent."  *Lodge*, 750 F.3d at 1272 (citing *Dawson*, 390 F.3d at 1149–50).

9

The court concludes that Mr. Parker's "few days" of feeling embarrassment and anxiety, which did not inflict psychological damage and which did not require professional care, is insufficient as a matter of law to justify an award of actual damages for emotional distress.[9]

Furthermore, as Mr. Parker has admitted, the memorandum decision of the Bankruptcy Court is devoid of any legal standard for assessing the propriety of an award of actual damages. The Bankruptcy Court justified its imposition of an award by reasoning that courts must "fashion damage awards which are sufficient [to] change [a creditor's] calculus" by disincentivizing violations of the automatic stay. (Doc. # 2-14, at 6.) Although this reasoning would be appropriate in the context of an award of punitive damages, the Bankruptcy Court engaged in this analysis in the context of actual damages. (*See* Doc. # 2-14, at 8 (beginning discussion of the propriety of punitive damages, thereby suggesting that prior reasoning justified award of actual damages).) The memorandum decision further explains that Credit Central knowingly violated the automatic stay and failed to mitigate its violation. (Doc. # 2-14, at 6–7.) But in setting a value for *actual* damages, the focus would be Mr. Parker's proof of suffering or other injury – not Credit Central's misconduct.

---

[9] The court rejects, however, Credit Central's argument that the causation element is lacking. If Mr. Parker's anxiety and embarrassment were significant enough to warrant actual damages for emotional distress (they are not), Mr. Parker showed that Credit Central's stay violation caused his distress.

For these reasons, the Bankruptcy Court's award of actual damages to Mr. Parker in the amount of $2,000 is due to be vacated.

## C.   Award of Attorney's Fees

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees."  The Bankruptcy Court based its award of attorney's fees on § 362(k), but also wrote that if it were unable to award fees pursuant to § 362(k), it "would" nevertheless award fees "under [its] inherent authority and under 11 U.S.C. § 105."  (Doc. # 7-1, at 4, 22–23.)  Credit Central contends that Mr. Parker's attorney's fees should not have been awarded under any of those sources of authority.[10]

### 1.   *Authority Under § 362(k) to Award Attorney's Fees*

#### a.   **Absence of Testimony Supporting Fee Arrangement**

A fundamental issue only briefly mentioned in Credit Central's argument is that "Mr. Parker did not testify or offer evidence that he incurred, or actually owes, any attorney's fees" related to "the work involved in this adversary proceeding." (Doc. # 6, at 27.)  This objection was not lodged in opposition to Mr. Parker's motion for attorney's fees.  (*See* Doc. # 2-27.)  "Ordinarily an appellate court does not give consideration to issues not raised below," and this principle extends to

---

[10] There has been no argument that the $30,318 fee computation was erroneously calculated or that counsel performed unnecessary or excessive work.  (*See* Doc. # 7-1, at 23.)

bankruptcy cases because "bankruptcy cases are to be tried in bankruptcy court." *Ala Dep't of Econ. & Cmty. Affairs v. Ball Healthcare-Dallas LLC*, (*In re Lett*), 632 F.3d 1216, 1226 (11th Cir. 2011) (internal quotation marks and alteration omitted).  Hence, this objection will not be considered here.

### b.    Pre-litigation Injury Requirement

Credit Central posits that Mr. Parker incurred no damages prior to suing Credit Central for violating the stay, and he therefore is not entitled to recover fees. Credit Central acknowledges that a debtor may file a complaint if he is suffering "an ongoing stay violation," (Doc. # 6, at 29), but it continues to deny that Mr. Parker was ever in that position.  Credit Central asserts that it was unnecessary for Mr. Parker to file an adversary proceeding to remedy the stay violation because, unbeknownst to Mr. Parker, Credit Central was trying (quite ineffectively) to stop the prosecution of the Dale County District Court suit.  Credit Central argues that all damages incurred by Mr. Parker – *i.e.*, attorney's fees for the prosecution of the adversary proceeding – were incurred *after* the adversary proceeding was filed, and Mr. Parker was not "injured" by the stay violation at the time that he sued Credit Central.  Credit Central relies heavily upon *Hutchings v. Ocwen Fed. Bank, FSB* (*In re Hutchings*), 348 B.R. 847 (Bankr. N.D. Ala. 2006), where Judge Cohen declined to award the plaintiff's attorney's fees and offered an extensive

explanation – nearly 40,000 words – for why § 362(k) allows only an "injured" party to recover damages for an automatic stay violation.

In response, Mr. Parker says summarily that "[e]ach" of Credit Central's arguments in its initial brief against the award of attorney's fees "was roundly rejected by the Bankruptcy Court." (Doc. # 18, at 69.) However, Credit Central did not cite *Hutchings* before the Bankruptcy Court in its opposition to Mr. Parker's request for attorney's fees. (*See* Doc. # 2-27.) Credit Central's argument below was similar but different. (*See* Doc. # 2-27, at 3–5 (relying on the rule announced in *Sternberg v. Johnston*, 595 F.3d 937, 947 (9th Cir. 2010)).) The Ninth Circuit in *Sternberg* held that debtors are entitled to recover attorney's fees only for the expense of enforcing the stay, but not for the cost of prosecuting a stay violation. The Bankruptcy Court rejected *Sternberg* as contrary to the law of the Eleventh Circuit and most other bankruptcy courts. (Doc. # 7-1, at 9 (citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539 (11th Cir. 1996)); 12–19 (explaining at length why the Bankruptcy Court believes that *Sternberg* was decided wrongly).)

There has been no reliance upon *Sternberg* on appeal, just *Hutchings*. *Hutchings* is distinguishable from *Sternberg*. *Sternberg* says attorney's fees are not recoverable for the prosecution of an adversary proceeding once the stay violation is corrected. *Hutchings* says attorney's fees are not recoverable for the prosecution of an adversary proceeding where there is no injury resulting from the

13

stay violation.  The court is not required to consider arguments raised for the first time on appeal.  *See In re Lett*, 632 F.3d at 1226.  Perhaps Credit Central did not cite *Hutchings* before the Bankruptcy Court because the argument would have been futile in view of the Bankruptcy Court's decision that Mr. Parker had suffered an emotional distress injury prior to filing the adversary proceeding.  Assuming that futility explains the omission of *Hutchings* from Credit Central's submissions to the Bankruptcy Court, this court, in its discretion, will consider Credit Central's arguments based on *Hutchings*.

Upon review of the *Hutchings* decision, it is apparent that it is distinguishable from this case.  In the concluding remarks, which summarize the facts and the law, the court stated:

> Had Mr. Hutchings been required to maintain this lawsuit in order to force [the defendant] to desist from further violating the stay, or to prevent [the defendant] from again violating the stay, or to undo the effects of [defendant]'s stay violations, or to recover compensatory damages that he actually incurred as a result of those violations prior to the institution of the lawsuit, the result would be completely different.  Certainly, a debtor is entitled to recover the attorney[']s fees and expenses that he or she has actually incurred in filing and maintaining a section 362[(k)] action for those purposes. . . .  However, the proof in this case clearly indicates that Mr. Hutchings' adversary proceeding was not intended to serve any of those purposes.  *The uncontroverted evidence is that [the defendant] ceased violating the stay prior to the institution of this lawsuit.*

*In re Hutchings*, 348 B.R. at 917 (emphasis added).  Here, of course, Credit Central did not cease violating the automatic stay until Mr. Parker sued.

Moreover, Credit Central persisted in the adversary proceeding to deny its conduct, the amount of Mr. Parker's debt, its receipt of notice of the bankruptcy case, its service of process on Mr. Parker in the state court suit, and even its own filing of a proof of claim.  Thus, Credit Central aggravated the injury and must bear the resulting pain.  So, in accord with *Hutchings*, "[Mr. Parker] is entitled to recover the attorney[']s fees and expenses that he . . . has actually incurred in filing and maintaining [his] section 362[(k)] action" "to force [Credit Central] to desist from further violating the stay." *Id.*[11]  Credit Central's objections based on *Hutchings* (Doc. # 6, at 27–33) are considered but found to be without merit.

Moreover, the Bankruptcy Court is correct that the law in this district and in the Eleventh Circuit supports the Bankruptcy Court's conclusion that "§ 362(k) provides for the attorneys' fees necessary to remedy the violation of the automatic stay, to prosecute the adversary proceeding[,] and to defend the appeal.  Anything

---

[11] *See also id.* at 901–02 ("[A] debtor is precluded from obtaining an award pursuant to section 362(h) of the costs, expenses and attorney[']s fees incurred or generated as part of the process of prosecuting a section 362(h) proceeding where the debtor:  (1) was not injured by a creditor's stay violation; (2) has not incurred damages as a result of a creditor's stay violation prior to institution of a section 362(h) proceeding; (3) does not stand to incur any damages as a result of a creditor's stay violation subsequent to institution of a section 362(h) proceeding except for costs, expenses and attorney[']s fees incurred or generated as part of the process of prosecuting the section 362(h) proceeding; *or (4) was not required to institute the section 362(h) proceeding in order to force the creditor to desist from further violating the stay*, or to prevent the creditor from again violating the stay, or to undo the effects of the creditor's stay violation.") (emphasis added).  Judge Cohen used the disjunctive "or" between his four hypothetical scenarios.  While categories (1), (2) and (3) describe and disqualify Mr. Parker under *Hutchings*'s rule, category (4) does not.  *See id.* at 901.

less than that would be contrary to both the plain language and the spirit of § 362(k)."  (Doc. # 7-1, at 8.)

### c.   Duty to Mitigate Damages

Credit Central also argues that Mr. Parker and Mr. Wooten failed to mitigate damages.[12]  Credit Central objects that Mr. Parker and his bankruptcy attorneys, whose representation predates Mr. Wooten's, "did not include the State Court Action in his bankruptcy petition" and did not "contact the Dale County District Court or Credit Central regarding [Credit Central's] lawsuit."  (Doc. # 6, at 36.)[13] Credit Central further complains that Mr. Wooten filed Mr. Parker's adversary proceeding complaint without contacting Credit Central or the Dale County District Court.  If Mr. Parker or Mr. Wooten had contacted Credit Central, Credit Central suggests that Mr. Parker or Mr. Wooten would have learned that Credit

---

[12] The words "mitigate" or "mitigation" are absent from Credit Central's opposition brief to Mr. Parker's motion for attorney's fees.  (*See* Doc. # 2-27.)  But the argument is considered here because Credit Central has previously laid the blame upon Mr. Parker and his counsel in more subtle terms.

[13] The initial brief is unclear about what prejudice this caused Credit Central, but in the reply brief, Credit Central associates Mr. Parker's non-inclusion of the state court case on his bankruptcy petition with Mr. Parker's failure to file a suggestion of bankruptcy in the state court case.  (Doc. # 21, at 7.)  Credit Central also complained in argument at trial that Mr. Parker did not file a suggestion of bankruptcy.  A suggestion of bankruptcy would have been appropriate if Mr. Parker had been served with process prior to the date that he filed his bankruptcy petition. *See Barnes v. Sawyer, (In re Barnes)*, 326 B.R. 832, 835 (Bankr. M.D. Ala. 2005) ("The purpose of a 'Suggestion of Bankruptcy' is to provide actual notice to the trial court and other parties when a party files bankruptcy.  While neither the Bankruptcy Code nor the Bankruptcy Rules require this, it is a good practice to file a Suggestion of Bankruptcy in every pending civil action to which a debtor is a party.").  But Credit Central ignores that Mr. Parker had not been lawfully served with process in the state court action at the time that he petitioned for bankruptcy relief. Mr. Parker's informal notice of Credit Central's intention to sue him to collect the debt is irrelevant.

16

Central was not trying to prosecute the state court action in violation of the stay. And if Mr. Parker or Mr. Wooten had contacted the Dale County District Court, Credit Central proposes that this could or would have stopped the prosecution of that lawsuit.

Again, Credit Central relies on *Hutchings*, but for a different point. There, after surveying several bankruptcy court decisions, Judge Cohen explained:

> A common conclusion . . . is that if the debtor or the debtor's attorney had just contacted the offending creditor, both damages and a subsequent lawsuit could have been avoided. That, of course is exactly what happened here. Mr. Hutchings contacted [his lawyer]. And before any damages were incurred[, his lawyer] contacted [the defendant]. And again, before any damages were incurred, [the defendant] stopped violating the stay and stopped its foreclosure proceeding.
>
> But, as the cases discussed above demonstrate, a debtor is not entitled to recover damages pursuant to section 362[(k)] where it was within the debtor's power to avoid, or at least mitigate, those damages. Again, that was the situation here. Having suffered no damages, and having obtained the exact result he desired, Mr. Hutchings could have avoided any damages simply by not filing his complaint or timely discontinuing it. But he did neither. And because he did not, he did not mitigate his damages as he was required to do. Consequently, he cannot be awarded those damages in this proceeding.

*In re Hutchings*, 348 B.R. at 909–10. Hence, Credit Central suggests that Mr. Parker's lawyers could and should have contacted Credit Central instead of initiating an adversary proceeding.

Credit Central also relies on the Bankruptcy Court's expectation, expressed in *In re Briskey*, 258 B.R. 473, 480 (Bankr. M.D. Ala. 2001), that lawyers

17

"cooperate in a spirit of professionalism . . . to [e]nsure that the automatic stay is not violated and that inadvertent violations are remedied promptly with a minimum of expense and delay" and "communicate with employers and personnel in [a] court" that issues process in violation of the automatic stay.

Credit Central's failure-to-mitigate arguments fail to persuade for a few reasons. First, assuming Mr. Parker or his lawyer had called Ms. Speaks about the ongoing stay violation at any point after receiving service of process or the entry of default judgment, he would have learned only what was revealed at trial: that Credit Central was using a non-lawyer to prosecute a case, and that she had been ineffective at complying with the automatic stay. It is not clear what communication from Mr. Parker to either the Dale County District Court or Credit Central would have accomplished to remedy the stay violation – specifically, service of Mr. Parker with process – when the onus was on Credit Central to dismiss or stay the collection suit once Mr. Parker orally informed the Ozark office of his bankruptcy petition. Mr. Parker's subjective awareness of Ms. Speaks's good intentions to stop the suit would not have stripped him of his right to bring an adversary proceeding to remedy the violation.

Secondly, as the Bankruptcy Court's memorandum decision demonstrates, the Bankruptcy Court considered the standard expectations stated in *Briskey* and other precedents. (*See* Doc. # 7-1, at 19–20 (stating the requirement that "debtors

18

and their lawyers . . . make reasonable effort to remedy stay violations before filing a complaint initiating an Adversary Proceeding"); at 19 n.8 (mentioning *Briskey* as an example of a case where the debtor's lawyer hastily sued the creditor instead of "first attempting to resolve things directly with the creditor.").) As the Bankruptcy Court explained, it was unwilling to allow damages or attorney's fees in an adversary proceeding where a creditor "unwittingly violates the automatic stay" and where pre-litigation communication could have remedied the violation. (Doc. # 7-1, at 19.) But as the Bankruptcy Court concluded and as this court has affirmed, Credit Central had notice of Mr. Parker's bankruptcy petition yet continued to violate the automatic stay for two months, and thereafter, put Mr. Parker to the task of proving largely undisputed facts in the adversary proceeding.

Finally, the Bankruptcy Court plainly rejected Credit Central's suggestion that "Mr. Wooten . . . allow[ed] his client to have a judgment taken against him." (Doc. # 7-1, at 21 (quoting Doc. # 2-27, at 5).) The Bankruptcy Court called Credit Central's argument "disingenuous" and a "blatant misrepresentation of the facts" and found that there was no evidence that Mr. Parker or Mr. Wooten "baited Credit Central into this automatic stay violation." (Doc. # 7-1, at 21.) This court agrees that Credit Central lacks any evidence that Mr. Parker's attorney is partially to blame for the consequences of Credit Central's misconduct.

For all these reasons, Mr. Parker is not barred from recovering attorney's fees for failure to mitigate his damages.

### 2.   *Alternative Authority to Award Attorney's Fees*

Credit Central comprehensively contests the Bankruptcy Court's statements that Credit Central defended the stay violation in bad faith – a fact that relates to the Bankruptcy Court's suggestive but unofficial ruling that if it lacked authority to award attorney's fees under § 362(k), it "would" award fees pursuant to its inherent authority or 11 U.S.C. § 105.  (Doc. # 7-1, at 4, 22–23.)  Credit Central acknowledges that what the Bankruptcy Court "would" do was mere "dicta." (Doc. # 21, at 17.)  The difference between dictum and ruling is substantial.  The Bankruptcy Court did not say that it based its fee decision on alternative grounds; it said that it *would* base its fee decision on alternative grounds if pressed for authority beyond § 362(k).  These remarks do not constitute a conclusion of law supporting the fee award imposed, and therefore, this court need not consider the propriety of such a hypothetical conclusion, or whether it could be justified reasonably by Credit Central's lack of good faith.  For this reason, Credit Central's objections to the Bankruptcy Court's remarks about its alternative authority to award attorney's fees and Credit Central's bad faith will not be considered.

### 3.    *Summary*

This court agrees that an award of fees was proper under § 362(k) and Credit Central has failed to show an abuse of discretion. The Bankruptcy Court's award of Mr. Parker's attorney's is due to be affirmed.

### D.    <u>**Award of Punitive Damages**</u>

Credit Central challenges the imposition of punitive damages.   "[A]n individual injured by any willful violation of a stay . . . in appropriate circumstances, may recover punitive damages."   11 U.S.C. § 362(k)(1).   Hence, awards of punitive damages are discretionary.   Courts typically have awarded punitive damages

> in response to particularly egregious conduct for both punitive and
> deterrent purposes.   Such awards are reserved for cases in which the
> defendant's conduct amounts to something more than a bare violation
> justifying compensatory damages or injunctive relief.   To recover
> punitive damages, the defendant must have acted with actual
> knowledge that he was violating the federally protected right or with
> reckless disregard of whether he was doing so.

*Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749, 755 (Bankr. S.D. Fla. 2008).   Five factors guide bankruptcy courts in determining whether an award of punitive damages is proper:   "(1) the nature of the [defendant]'s conduct; (2) the nature and extent of the harm to the plaintiff; (3) the [defendant]'s ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor." *Castillo v. Three Aces Auto Sales (In re Castillo)*, 456 B.R. 719, 727 (Bankr. N.D.

Ga. 2011); *see also In re White*, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009) (using same five factors); *In re Roche*, 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005) (same).

In support of its finding that punitive damages should be imposed, the Bankruptcy Court found that Credit Central had attempted to minimize its costs by using non-lawyers to collect small claims in state court. The court explained that imposing punitive damages would hopefully "encourage Credit Central, and perhaps others similarly situated, either to use lawyers to bring suit, or at least to properly supervise its employees." (Doc. # 2-14, at 8.) The court cited several decisions of other bankruptcy courts that awarded punitive damages where the defendant violated the automatic stay. (Doc. # 2-14, at 8–9.) It reasoned that a $10,000 punitive damages award, which was five times its award for actual damages, was adequate to deter Credit Central from violating the stay in the same way in the future. (Doc. # 2-14, at 9–10.) The Bankruptcy Court did not find that Credit Central's stay violation was egregious and did not discuss the five guideposts cited above.

Credit Central challenges the Bankruptcy Court's imposition of punitive damages because there are no underlying actual damages, and even assuming actual damages, it argues that Mr. Parker "failed to establish the predicate behavior" that warrants punitive damages. (Doc. # 6, at 21.) Credit Central asserts that its violation of the stay was not egregious and further contends that the

Bankruptcy Court improperly penalized it for engaging in a lawful business practice, *i.e.*, using non-lawyers to prosecute small claims in Alabama's state courts.[14]

Mr. Parker responds that relevant case law supports the Bankruptcy Court's imposition of punitive damages.  He asserts that the Bankruptcy Court's acknowledgement that there are more egregious offenders than Credit Central does not mean that Credit Central is absolved from any punitive damages award.  Mr. Parker contends that the Bankruptcy Court did not penalize Credit Central's lawful maintenance of small claims suits so much as its failure to ensure that its employees maintained those suits without the risk of violating the automatic stay.

The absence of any compensable emotional distress or other actual damages other than attorney's fees does not preclude this court from upholding the Bankruptcy Court's award of punitive damages because a debtor's incurrence of attorney's fees to prosecute the stay violation is "actual damages" under § 362(k). *See Bank of Boston v. Baker (In re Baker)*, 140 B.R. 88, 90 (D. Vt. 1992) (interpreting plain language of § 362 to mean that "actual damages" "includ[es]

---

[14] Credit Central does not argue that $10,000 in punitive damages, by itself, is excessive. However, Credit Central has argued that the imposition of attorney's fees, which Credit Central deems punitive in nature, "improperly inflates the ratio of punitive damages from 5 to 1 to a whopping 15 to 1." (Doc. # 13, at 17; *see also* Doc. # 21, at 24.)  Credit Central ignores that attorney's fees *are* actual damages under § 362(k).  Properly viewing attorney's fees as actual damages ($30,318), the ratio of actual to punitive damages is far below a 1:1 ratio.

attorneys' fees").[15]  Thus, an award of punitive damages "made in connection with an award of compensatory damages in the form of attorneys' fees," but without any other actual damages, is not erroneous.  *Id.*  *See also Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989) (reinstating bankruptcy court's award of attorney's fees and punitive damages); *In re M & J Feed Mill, Inc.*, 112 B.R. 985, 989–90 (Bankr. W.D. Mo. 1990) (awarding fees and punitive damages).

Under the five-factor list for the proper assessment of punitive damages, the court holds that Credit Central acted with actual knowledge of its violation of the automatic stay, because it was repeatedly informed of the ongoing actions against Mr. Parker in the state court proceedings (*e.g.*, two attempts of service and an entry of default judgment against Mr. Parker).  At best, Credit Central acted with reckless disregard of whether it was violating the stay because it did not ensure that its employees or an attorney effectively stopped the prosecution of the collection suit.  These facts make Credit Central's conduct serious enough to warrant punitive damages for purposes of both penalization and deterrence.  It is no excuse that Ms. Speaks did not appreciate how to effectively stop the prosecution of the state court

---

[15]  Credit Central has agreed with this proposition in the Bankruptcy Court.  (*See* Doc. # 2-27, at 2 ("[I]t is clear that attorney's fees are included in 'actual damages' and are not addressed as a separate category of damages with regard to a violation of the automatic stay.").)

collection action, and it is no defense that she tried her best and meant no harm to Mr. Parker.

Furthermore, the five factors support the Bankruptcy Court's imposition of punitive damages because Credit Central's stay violation was, as the Bankruptcy Court reasoned, foreseeable and avoidable. Credit Central may have the right to prosecute small claims in Alabama without the assistance of counsel, but it does not have the right to violate the automatic stay in order to keeps its legal costs low. Hence, (1) the nature of Credit Central's conduct, (2) Credit Central's ability to pay the punitive damages award, (3) its motive to contain its legal costs at the risk of violating the stay, and (4) the absence of any provocation by Mr. Parker are four factors which weigh in favor of the Bankruptcy Court's punitive damages award. *Castillo*, 456 B.R. at 727.[16]

Any other objections of Credit Central not expressly addressed (*see* Doc. # 6, at 25–26) are rejected. The Bankruptcy Court's award of $10,000 in punitive damages is due to be affirmed.

## V. CONCLUSION

Based upon the foregoing analysis, the Bankruptcy Court's judgment awarding damages (Doc. # 2-15) is AFFIRMED IN PART and VACATED AND

---

[16] To be clear, the court is not affirming the penalization of Credit Central for engaging in lawful conduct under Alabama's state court rules. The court is affirming the penalization of Credit Central for willfully violating the automatic stay, an established fact.

25

REMANDED IN PART, and the Bankruptcy Court's order awarding attorney's fees (Doc. # 7-2) is AFFIRMED.

A separate final judgment will be entered.

DONE this 10th day of March, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

26